[Cite as *State v. Baker*, 2023-Ohio-2061.]

# IN THE COURT OF APPEALS OF OHIO

## SEVENTH APPELLATE DISTRICT
## COLUMBIANA COUNTY

STATE OF OHIO,

Plaintiff-Appellee,

v.

DEVIN E. BAKER,

Defendant-Appellant.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 22 CO 0023**

---

Criminal Appeal from the
Court of Common Pleas of Columbiana County, Ohio
Case No. 2019 CR 435

**BEFORE:**
Carol Ann Robb, Cheryl L. Waite, Mark A. Hanni, Judges.

---

**JUDGMENT:**
Affirmed.

---

*Atty. Vito J. Abruzzino,* Prosecuting Attorney, *Atty. Shelley M. Pratt*, Assistant Prosecuting Attorney, Columbiana County Prosecutor's Office, 135 South Market Street, Lisbon, Ohio 44432 for Plaintiff-Appellee. and

*Atty. Charles C. Amato, Atty. Wyatt S. Nolker*, Amato Law Office, 420 Broadway Avenue, Wellsville, Ohio 43968 for Defendant-Appellant.

Dated: June 21, 2023

**Robb, J.**

**{¶1}** Defendant-Appellant Devin E. Baker appeals his conviction after a jury trial in the Columbiana County Common Pleas Court. He contends the verdict was against the manifest weight of the evidence and counsel rendered ineffective assistance through untimely witness interviewing. For the following reasons, Appellant's conviction is affirmed.

STATEMENT OF THE CASE

**{¶2}** On October 18, 2019, Appellant was indicted for various offenses. The court appointed counsel to represent him, but he retained a different attorney nearly a year later. On May 31, 2022, a jury trial commenced on the charge of failure to comply with an order or signal of a police officer, a third-degree felony due to the allegation the operation of the vehicle caused a substantial risk of serious physical harm to persons or property. R.C. 2921.331(B)(C)(5)(a)(ii). The other charges were dismissed by the state before trial.

**{¶3}** The trial testimony established troopers from the Ohio State Highway Patrol were investigating a man in a car they stopped in Rogers, Ohio on September 11, 2019 at approximately 10:30 p.m. (Tr. 248, 372, 388). A female approached the scene and named her former boyfriend (Appellant Devin E. Baker) and her uncle (Thomas Hughes) as participants in an altercation with the man in the stopped car. She pointed out a gray Ford pickup truck as it approached the intersection of State Routes 7 and 154. (Tr. 249-250, 374).

**{¶4}** As Trooper 1 entered his cruiser to detain the truck, the truck sped north on Route 7 reaching speeds in excess of 100 miles per hour before the trooper even activated his lights and sirens. (Tr. 375). In addition to severely speeding during the lengthy chase, the truck drove left of center multiple times, failed to use turn signals, and ran four stop signs. The truck passed six vehicles after the trooper activated his lights. (Tr. 390).

**{¶5}** Trooper 2 traveled a different path to Route 170 to intercept the truck before it reached the state line. (Tr. 251). He deployed stop sticks in the road near a curve and railroad tracks, taking cover by a concrete barrier as he watched the vehicle approach his

position. (Tr. 252). The headlights of his cruiser were facing the truck, the overhead lights were activated, a porch light was on at a nearby house, and there was a streetlight near the railroad tracks. (Tr. 311); (St.Ex. 1). The truck slowed (as evidenced by brake lights seen by Trooper 1); the driver's side tires of the truck then made contact with the stop sticks. (Tr. 257, 260, 398).

{¶6} Trooper 2 said he could "clearly" see the driver as the truck passed his position near the stop sticks. (Tr. 257-258, 274, 329). He also noticed the passenger was wearing a black baseball cap. (Tr. 258). Trooper 2 got back in his cruiser and caught up to the chase. Tire pieces, a hubcap, and parts of the road were flying through the air as the truck drove on the rims and swerved "all over the roadway" while trying to maintain control. (Tr. 260, 379, 399).

{¶7} Trooper 1 passed the truck to assume the lead, performing a "boxing in" maneuver and hoping to force the truck to stop. He passed the truck with his "alley lights" activated, which illuminated the passenger compartment of the truck. He testified this allowed him to view the driver as he passed; he also noticed the passenger was still wearing a hat, which he noticed earlier as well. (Tr. 382-382, 403-405).

{¶8} As Trooper 1 started braking, the truck made a hard right onto a dirt drive leading to a rock quarry. The troopers waited for the dust in the air to clear before driving further down the drive; they found an empty truck, which had crashed into a gate in the middle of the road. (Tr. 261-262). Trooper 2 saw a person in a baseball hat running toward a business on the property. (Tr. 263-264). This person was apprehended and identified as Thomas Hughes; he had a visible injury on his nose from hitting his head on the dashboard during the crash into the gate. (Tr. 264-265); (St.Ex. 4, Def.Ex. F, H).

{¶9} Both troopers testified they identified Appellant as the driver after seeing his official photograph they obtained by running the name Devin E. Baker through the law enforcement database. (Tr. 267-268, 322, 386). They believed Appellant fled into the woods. Aviation support was unavailable, and the K-9 units could not proceed through briar bushes that were thick with thorns. (Tr. 265-266, 389). When Appellant was arrested two days later, Trooper 2 was not surprised to see scratches and cuts on Appellant's arms, hands, and neck. (Tr. 268-270); (St.Ex. 6-9, Def.Ex. I). Appellant also had a gunshot wound to the leg. (Tr. 268).

**{¶10}** The defense presented the testimony of a woman who lived with Hughes at the time of the police chase. She said Appellant was at their house but did not drive a vehicle to get there. When Appellant's former girlfriend was dropped off in the neighborhood by a man, an argument in the driveway ensued. When this man drove away in his car, Appellant and Hughes quickly left in the Ford truck with Hughes driving his father's truck. (Tr. 465-468).

**{¶11}** The jury found Appellant guilty as charged. The court sentenced Appellant to 30 months in prison and suspended his license for 10 years. (6/14/22 J.E.). A timely appeal followed.

<u>ASSIGNMENT OF ERROR ONE: WEIGHT</u>

**{¶12}** Appellant sets forth two assignments of error, the first of which alleges:

"THE CONVICTION OF THE APPELLANT FOR THE CHARGE OF FAILURE TO COMPLY WITH SIGNAL OR ORDER OF POLICE OFFICER IN THIS CASE IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND SHOULD BE REVERSED BECAUSE THERE IS REASONABLE DOUBT CREATED BY WITNESS TESTIMONY."

**{¶13}** Weight of the evidence concerns the effect of the evidence in inducing belief, and this review evaluates "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other." *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). The appellate court considers whether the state met its burden of persuasion (as opposed to the state's burden of production involved in a sufficiency review). *Id.* at 390 (Cook, J., concurring). When a defendant claims the conviction is contrary to the manifest weight of the evidence, the appellate court reviews the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Lang*, 129 Ohio St.3d 512, 2011-Ohio-4215, 954 N.E.2d 596, ¶ 220, citing *Thompkins*, 78 Ohio St.3d at 387.

**{¶14}** Nevertheless, "the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts." *State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, 960 N.E.2d 955, ¶ 118, quoting *State v. DeHass*, 10 Ohio St.2d 230,

227 N.E.2d 212 (1967), paragraph one of the syllabus. The trier of fact occupies the best position from which to weigh the evidence and judge the witnesses' credibility by observing their gestures, voice inflections, and demeanor for signs of sincerity. *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984).

{¶15} Where a case was tried by a jury, only a unanimous appellate court can reverse on manifest weight of the evidence grounds. Ohio Constitution, Article IV, Section 3(B)(3). The power of the court of appeals to sit as the "thirteenth juror" is limited in order to preserve the jury's primary function of weighing the evidence. *Thompkins*, 78 Ohio St.3d at 389.

{¶16} Trooper 1 acknowledged he received conflicting information during the chase as to who was driving the truck and therefore used both the names Devin Baker and Thomas Hughes when ordering the driver to stop over his bullhorn. (Tr. 413). Trooper 2 acknowledged he told Trooper 1 over the radio that Devin Baker was driving, noting this was the information he received. (Tr. 291, 306-208). Appellant suggests this information influenced the troopers' later identification of Appellant as the driver. Appellant notes it was dark outside and claims the lighting was poor. He contends the troopers could not have viewed the driver long enough during the chase to identify him from his official photograph on file. He concludes the troopers' identification of him as the driver was "overly assured" and unreliable. Appellant points out the truck belonged to the father of Hughes and required physical keys (as opposed to the mere presence of a key fob). He emphasizes his witness's testimony stating Hughes was driving the truck when it first left the house and concludes it was more likely Hughes was driving during the chase.

{¶17} As the state points out, the testimony of the witness presented by the defense did not preclude the situation where the occupants of the truck switched positions after stopping and exiting the vehicle. There was no indication their leaving of the house occurred immediately before their arrival at the intersection where the trooper had detained a vehicle. Moreover, the determination of this witness's credibility (as a person who *formerly* lived with Hughes) was the province of the jury. The troopers both said they viewed the driver clearly.

Case No. 22 CO 0023

**{¶18}** Trooper 2 saw him driving past his position where he was standing by the side of the road as the truck slowed for the curve and hit the stop sticks. Trooper 2 pointed out there was a streetlight at the nearby railroad tracks and his cruiser had the overhead lights activated and the headlights pointed at the truck. He said he could "clearly" see the driver. (Tr. 257-258, 274, 329). When he saw Appellant's official photograph at the crash site, he was able to positively identify Appellant "without a doubt" declaring he was "[a]bsolutely" the driver. (Tr. 268, 332). He also saw the occupants of the truck when it approached the lighted intersection just before fleeing. (Tr. 308).

**{¶19}** Trooper 1 said he saw the driver as his cruiser passed the truck, noting his overhead lights were in the highest mode ("alley lights"), which illuminated the interior of the truck from the side and allowed a clear view of the driver. (Tr. 382-383, 399). He also said he had "no doubt at all" about his ability to identify Appellant as the driver upon viewing his official photograph during the chase. (Tr. 386, 402, 418, 433-435). The jury occupied the primary position for weighing evidence, and the troopers' credibility is best left to the jurors who observed their demeanor as they testified. *See Hunter*, 131 Ohio St.3d 67 at ¶ 118.

**{¶20}** As the state additionally points out, both troopers noticed the passenger was wearing a hat. Trooper 2 noticed this fact through the passenger window at some point before his act of passing the truck and viewing the driver. (Tr. 403-405). The person the police apprehended running from the scene was wearing a hat and had an injury to his nose consistent with his utterance that he hit his head on the dashboard during the crash. The other occupant of the truck was believed to have entered the wooded area, which was filled with so many briar bushes that the dogs could not proceed. When Appellant was arrested two days later, he predictably had scratches and cuts on his neck, arms, and hands. (Tr. 268-269). Circumstantial evidence inherently possesses the same probative value as direct evidence. *State v. Treesh*, 90 Ohio St.3d 460, 485, 739 N.E.2d 749 (2001).

**{¶21}** "When more than one competing interpretation of the evidence is available and the one chosen by the jury is not unbelievable, we do not choose which theory we believe is more credible and impose our view over that of the jury." *State v. Baker*, 7th Dist. Mahoning No. 19 MA 0080, 2020-Ohio-7023, ¶ 148, citing *State v. Gore*, 131 Ohio

App.3d 197, 201, 722 N.E.2d 125 (7th Dist.1999). A thorough review of the record does not indicate this is the "exceptional" case in which the jury "clearly lost its way" and created a manifest miscarriage of justice requiring a new trial; the evidence does not weigh "heavily" against the conviction. *See Lang*, 129 Ohio St.3d 512 at ¶ 220. Accordingly, the jury verdict was not contrary to the manifest weight of the evidence. This assignment of error is overruled.

ASSIGNMENT OF ERROR TWO: COUNSEL

**{¶22}** Appellant's second assignment of error contends:

"APPELLANT RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL UNDER THE SIXTH AMENDMENT OF THE UNITED STATES CONSITUTION AND ARTICLE I, § 10 OF THE OHIO CONSTITUTION WHEN COUNSEL FAILED TO COMPLY WITH COURT ORDERS AND TIMELY PREPARE FOR TRIAL."

**{¶23}** Ineffective assistance of counsel arguments require the defendant to meet his burden of showing both deficient performance and resulting prejudice. *State v. Carter*, 72 Ohio St.3d 545, 557, 651 N.E.2d 965 (1995), citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In evaluating the deficiency prong of the test, the defendant must show "a substantial violation" of defense counsel's "essential duties" to the client under an objective standard of reasonableness. *State v. Bradley*, 42 Ohio St.3d 136, 142, 538 N.E.2d 373 (1989). To find ineffective assistance of counsel, the appellate court must first conclude the defendant's trial attorney "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the [constitution] without second-guessing tactical decisions or being influenced by the 'distorting effects of hindsight.'" *Strickland*, 466 U.S. at 687, 689. Our review is highly deferential to counsel's performance as there is a strong presumption counsel's conduct falls within the wide range of reasonable professional representation. *Bradley*, 42 Ohio St.3d at 142.

**{¶24}** On the prejudice prong, the defendant must show there is a reasonable probability the result of the proceedings would have been different but for the deficient performance; a reasonable probability is one "sufficient to undermine confidence in the outcome." *Id.* Lesser tests of prejudice have been rejected: "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the

proceeding." *Id.* at 142, fn. 1, quoting *Strickland*, 466 U.S. at 693. Prejudice from defective representation justifies reversal only where the results were unreliable or the proceeding was fundamentally unfair due to the performance of trial counsel. *Carter*, 72 Ohio St.3d at 558, citing *Lockhart v. Fretwell*, 506 U.S. 364, 369, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993).

**{¶25}** If there was no prejudice, then there is no need to review whether the performance was deficient and vice versa. *State v. Madrigal*, 87 Ohio St.3d 378, 389, 721 N.E.2d 52 (2000). "There is no reason for a court deciding an ineffective assistance claim * * * to address both components of the inquiry if the defendant makes an insufficient showing on one." *Bradley*, 42 Ohio St.3d at 143, quoting *Strickland*, 466 U.S. at 697. "The object of an ineffectiveness claim is not to grade counsel's performance. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." *Id.*

**{¶26}** Appellant argues trial counsel was prejudicially deficient by failing to interview a witness (KP) until four days before trial. KP was Appellant's former girlfriend and the niece of Hughes. The testimony indicated she appeared at the scene of the initial detention of a car, which was before the truck appeared and fled. She told Trooper 2 the names of the two people who got in the truck when it left the residence (which is how the troopers knew what names to run when viewing photographs). (Tr. 217-218).

**{¶27}** For purposes of this ineffective assistance of counsel argument, which relates to information on a dash cam video cited by the defense below (but not introduced at trial), we review some background facts from the video. KP's male friend was stopped for driving a severely damaged car; he reported he was chased and run off the road by a Ford truck, after which the truck occupants punched him in the face. KP arrived to speak to troopers nearly 20 minutes after they initiated the stop of her friend's car. When a trooper asked KP about Appellant chasing her friend, KP replied, "We all seen it." Her comment led Trooper 2 to name Devin Baker as the driver when asked over the radio; this was followed by a dispatch about a female on the scene naming the driver as Thomas Hughes (which was consistent with the defense witness's testimony about Hughes driving when the vehicle first left the house). We note KP also noted her parents called to tell her Appellant and Hughes followed her when she left to meet the troopers (which

indicated they returned to the house after the crash and which suggested KP did not see who was driving when they last left the neighborhood).

**{¶28}** The defense planned to call KP to testify to her belief on who was driving the truck. In an interview four days before trial, the defense learned KP suffered amnesia from an injury. Appellant complains this late discovery prompted the defense to attempt to present substitute testimony from individuals who were not named on a witness list, such as Trooper 3.

**{¶29}** On the first day of trial (Tuesday, May 31, 2022), defense counsel informed the court he found out on Friday that KP suffered memory loss after an unrelated motorcycle accident. (Tr. 5). Defense counsel texted the prosecutor the day before trial about amending the witness list, but the state objected to the late notice. Due to KP's medical condition, defense counsel wished to call Trooper 3 to testify about whom KP believed was driving; counsel noted after the other two troopers left the scene, radio traffic reported Hughes was driving. (Tr. 5-7, 213, 335, 350). Defense counsel argued KP's statement could be admitted through the trooper as a present sense impression or an excited utterance. (Tr. 209-211). In addition to the late notice, the state objected to the hearsay nature of the testimony to be elicited. It was also pointed out there was no indication KP observed who was driving after the occupants exited the truck at the site of her male friend's crash (or when the truck was reported to be following her later). (Tr. 335-338).

**{¶30}** Although the trial court criticized the late addition of Trooper 3 as a witness, while discussing a motion in limine, the court advised the issue would be considered later when it arose at trial. When the court thereafter considered the testimony the defense wished to present from Trooper 3, who appeared pursuant to a subpoena, the court opined KP's statement to him would be inadmissible hearsay, finding it was not an excited utterance or present sense impression. (Tr. 334-349). Contrary to Appellant's contention, there is no indication Trooper 3 was precluded from testifying for being untimely named as a witness.

**{¶31}** Moreover, as the state points out, it appeared KP would have been called by the defense to testify Hughes was driving when the truck left the Hughes' residence earlier in the night. Notably, the defense presented a witness who testified to this fact.

Case No. 22 CO 0023

As reviewed supra, this witness previously lived with Hughes. She testified Appellant was a passenger and Hughes was driving when the truck left their residence to chase a vehicle containing KP's male friend. (Tr. 466, 468). Therefore, the defense was able to present a witness who testified Appellant was merely a passenger when the truck initially left to follow KP's male friend. She also disclosed the fleeing truck, owned by the father of Hughes, required physical keys, and was previously driven by Hughes on various occasions. We also note defense counsel suggested Trooper 3 was "not really that consequential." (Tr. 5).

**{¶32}** Furthermore, the defense ensured the jury was informed about the conflicting radio traffic reporting the potential name of the driver. Trooper 2 testified KP arrived at the scene and said her parents informed her Appellant and Hughes followed her when she left the house (to meet the troopers at the car). (Tr. 250). On cross-examination, he listened to an audio clip and acknowledged he told Trooper 1 over the radio during the chase that "Devin Baker" was driving; he noted he was told Appellant was driving. (Tr. 291, 306-308). Trooper 1 acknowledged he received conflicting information during the chase as to who was driving the truck. (Tr. 413). The defense elicited from two troopers that Trooper 1 announced over his loudspeaker both: "Devin Baker, pull over the car" and "Thomas Hughes, pull over the car." (Tr. 316, 413). As reviewed in the prior assignment, the jury heard this testimony and weighed the evidence as to whether the troopers saw the person driving during the police chase and whether they correctly identified the person they saw driving as Appellant (after viewing his official photograph and capturing Hughes at the final crash site).

**{¶33}** The totality of the evidence must be considered in gauging an ineffective assistance of counsel claim. *Bradley*, 42 Ohio St.3d at 142, quoting *Strickland*, 466 U.S. at 695. As to the alleged deficiency, there is no allegation defense counsel failed to interview the witness when the case was originally being prepared for trial; this case was continued multiple times, and amnesia of a defense witness due to an intervening trauma is not an expected situation. In any case, deficiency need not be addressed where prejudice is lacking. Considering the entirety of the evidence on the record and in the proffers, there is not a reasonable probability the result would have been different if counsel learned of KP's amnesia earlier and added an additional alternative witness such

as Trooper 3 (whose testimony did not appear to be excluded on untimeliness grounds in any event). Accordingly, prejudice is lacking from the alleged deficiency in performance. This assignment of error is overruled.

{¶34} For the foregoing reasons, Appellant's conviction is affirmed.


Waite, J., concurs.

Hanni, J., concurs.

[Cite as *State v. Baker*, 2023-Ohio-2061.]

———————————————

For the reasons stated in the Opinion rendered herein, the assignments of error are overruled and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Columbiana County, Ohio, is affirmed.  Costs to be taxed against the Appellant.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## <u>NOTICE TO COUNSEL</u>

**This document constitutes a final judgment entry.**